IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:16-cr-00015-SI-14 |
| v. | **OPINION AND ORDER** |
| **DAMIAN VARGAS**, | |
| Defendant. | |

**Michael H. Simon, District Judge.**

On May 15, 2020, Defendant Damian Vargas ("Mr. Vargas") filed a Motion for Early

Release Due to COVID-19. ECF 984. The Government opposes Mr. Vargas's motion. For the

reasons that follow, the Court DENIES Mr. Vargas's motion for early release.

## LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE

**A. Modifying a Term of Imprisonment for Compassionate Release**

A district court generally "may not modify a term of imprisonment once it has been

imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010).

Congress, however, has expressly authorized a district court to modify a defendant's sentence in

three limited circumstances: (1) when granting a motion for compassionate release under 18

U.S.C. § 3582(c)(1)(A); (2) when expressly permitted by statute or by Rule 35 of the Federal

Rules of Criminal Procedure; or (3) when a defendant has been sentenced based on a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(1). The motion before the Court seeks compassionate release.

Before 2018, § 3582(c)(1)(A) required that a motion for compassionate release could be brought only by the Bureau of Prisons ("BOP"). The First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), amended § 3582 to authorize courts to grant a motion for compassionate release filed by a defendant. A defendant, however, may only bring a motion for compassionate release *after*: (1) petitioning the BOP to make such a motion on the defendant's behalf; *and* (2) either (a) the defendant has exhausted all administrative appeals after the BOP denied the defendant's petition or (b) thirty days has elapsed after the warden of the defendant's facility received the defendant's petition, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).[1]

Compassionate release under § 3582(c)(1)(A) authorizes a court to modify a defendant's term of imprisonment if the court finds that two conditions have been satisfied. The first is that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The second is that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The court also must *consider* the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id.*

---

[1] On June 2, 2020, the United States Court of Appeals for the Sixth Circuit held that a defendant's failure to satisfy this administrative exhaustion requirement does not deprive a court of subject-matter jurisdiction; instead, this is a mandatory claim-processing rule that binds the courts when properly asserted by the Government and not forfeited. *United States v. Alam*, --- F.3d ---, 2020 WL 2845694 (6th Cir. June 2, 2020). The Ninth Circuit has not yet addressed this issue.

**B.  Extraordinary and Compelling Reasons**

The Sentencing Commission policy statement for reducing a term of imprisonment under § 3582(c)(1)(A) is found in the United States Sentencing Guidelines Manual ("USSG") at § 1B1.13. That policy statement explains the phrase "extraordinary and compelling reasons." USSG § 1B1.13(1)(A) and cmt. 1. According to the policy statement, extraordinary and compelling reasons are: (1) the medical condition of the defendant (defined as whether the defendant is suffering from a terminal illness; or is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"); (2) the age of the defendant (defined as whether the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less); (3) family circumstances (defined as the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner); and (4) any other extraordinary and compelling reason determined by the Director of the BOP. USSG § 1B1.13 cmt. 1.

We are currently in a global health crisis caused by the 2019 novel Coronavirus ("COVID-19"), which already has taken the lives of more than 110,000 people just in the United States during the past several months. When a defendant has a chronic medical condition that may substantially elevate the defendant's risk of becoming seriously ill or dying from COVID-19, that condition may satisfy the standard of extraordinary and compelling reasons. Under these circumstances, a chronic medical condition (*i.e.*, one from which a defendant is not

expected to recover) reasonably may be found to be both serious and capable of substantially diminishing the ability of the defendant to provide self-care within the environment of a correctional facility, even if that condition would not have constituted an extraordinary and compelling reason absent the heightened risk of COVID-19. *See generally* USSG § 1B1.13 and cmt. 1(A)(ii)(I).

Alternatively, USSG § 1B1.13, as currently written, does not constrain the Court's ability to find extraordinary and compelling reasons here. Because the Sentencing Commission's policy statement was not amended after enactment of the First Step Act, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" . . . "because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (citing *Brown v. United States*, 411 F. Supp. 3d 447, 499 (canvassing district court decisions)) (quotation marked omitted); *see also United States v. Redd*, 2020 WL 1248493, at *6. (E.D. Va. Mar. 16, 2020) ("[T]here does not currently exist, for the purposes of satisfying the ["FSA's] 'consistency' requirement, an 'applicable policy statement.'"); *United States v. Barber*, 2020 WL 2404679, at *3 (D. Or. May 12, 2020) ("The Court is persuaded by the reasoning of numerous other district courts and holds that it is not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.") (citations and quotation marks omitted).

As explained by one court, "a majority of federal district courts have found that the most natural reading of the amended § 3582(c) and [28 U.S.C.] § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Perez*, 2020 WL 1180719, at *2 (D. Kan. Mar. 11,

2020). Indeed, the Government previously conceded this point in *United States v. Young*, agreeing that "the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). The court in *Young* followed many other district courts in recognizing that § 1B1.13's defined categories are not exclusive: "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *Id*. The Court agrees with this alternative analysis as well.

## C.  Safety of Other Persons and the Community

The policy statement further provides that, in addition to finding extraordinary and compelling reasons, a court also must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). The factors to be considered in deciding whether a defendant is a danger to the safety of any other person or to the community are: (1) the nature and circumstances of the offense (including whether the offense is a crime of violence, a violation of 18 U.S.C. § 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device); (2) the weight of the evidence; (3) the history and characteristics of the defendant (including, among other things, the defendant's character, physical and mental condition, and family ties and whether at the time of the offense or arrest the defendant was on probation, parole, or other release); and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

**D.  Sentencing Factors Under § 3553(a)**

Finally, as provided in both § 3582(c)(1)(A) and the policy statement, a court must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other treatment in the most effective manner. 18 U.S.C. § 3553(a). The policy statement also recognizes that the sentencing court "is in a unique position to determine whether the circumstances warrant a reduction . . ., after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement[.]" USSG § 1B1.13 cmt. 4.

## DISCUSSION

Mr. Vargas is 31 years old. In February 2018, Mr. Vargas pleaded guilty to conspiracy to import and distribute, and the importation and distribution of, methamphetamine and heroin and using a communications facility in furtherance of a drug trafficking crime, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i) and (viii), 843(b), 846, 952, and 960. Mr. Vargas admitted that during the conspiracy, he and his coconspirators trafficked more than 45 kilograms of methamphetamine and more than 10 kilograms of heroin. On May 2, 2019, the Court sentenced Mr. Vargas to a term of 97 months imprisonment, followed by five years of supervised release. He is currently serving his sentence at the Federal Correctional Institution at Lompoc, California ("FCI Lompoc"). His scheduled release date is September 3, 2023. According to a note from his doctor, Mr. Vargas was previously diagnosed with asthma. He was examined in 2016 and prescribed medication. ECF 991-1 at 1.

On May 2, 2020, Mr. Vargas was tested for COVID-19 as part of mass testing conducted at FCI Lompoc. ECF 990 at 2. On May 6, his test came back positive for COVID-19, although he was asymptomatic. *Id*. at 33. FCI Lompoc's Health Services then examined Mr. Vargas daily, at least through May 18, 2020, and he remained asymptomatic. *Id*. at 24.

On May 15, 2020, Mr. Vargas, through counsel, filed a motion for early release. ECF 984. In that motion, Mr. Vargas "requests that the Court recommend to the Bureau of Prisons that his sentence be reduced pursuant to 18 U.S.C. § 3582 and/or that he be placed in home confinement forthwith and for the maximum period permissible, pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (March 27, 2020), the Second Chance Act of 2007, the First Step Act of 2018, 18 U.S.C. § 3621, and 18 U.S.C. § 624." Id. at 3.

In response, the Government states that Mr. Vargas "failed to address the statutory exhaustion requirement" and that the Government "conferred with the Bureau of Prisons, and it has no record that this defendant has submitted an administrative request for compassionate release." ECF 989 at 1. Accordingly, the Government urges that Mr. Vargas's motion should be denied as premature with leave to refile. The Government adds:

> To the extent that Vargas seeks a judicial recommendation for consideration for transfer to home confinement under CARES, the United States opposes that request. Vargas is a healthy, 31-year-old male. Although he provided this court with a note from a doctor in Michoacán, that doctor treated him in 1998 and 2005, when Vargas was a juvenile. There is nothing in the BOP's medical records indicating that Vargas suffers from any medical conditions at all, aside from his asymptomatic COVID virus test results.

*Id*.

In reply, counsel for Mr. Vargas states that Mr. Vargas's family reports that Mr. Vargas did "submit paperwork at the prison seeking through administrative remedy to obtain

compassionate release and conversion of the balance of his sentence to Home Confinement."
ECF 991 at 2. Counsel for Mr. Vargas also submitted additional documentation confirming that
he is asthmatic, having last been examined and diagnosed in 2016. ECF 991-1 at 1. The Court
accepts counsel's multiple hearsay statements and finds that Mr. Vargas has complied with the
mandatory claim-processing rules in 18 U.S.C. § 3582(c)(1)(A). The Court also finds that
Mr. Vargas suffers from asthma, although there is insufficient information to determine the
extent of his asthma.

There is no dispute that we are in a global health crisis and pandemic. The CDC warns
that "[p]eople 65 years and older" are "at high-risk for severe illness from COVID-19." *See*
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html
(lasted visited June 4, 2020). In addition, the CDC explains that people of all ages with certain
underlying medical conditions, particularly if not well controlled, also are at high-risk for severe
illness from COVID-19. According to the CDC, these underlying medical conditions are:

- People with chronic lung disease or *moderate to severe asthma*[.]
- People who have serious heart conditions[.]
- People who are immunocompromised[.]
  *   *   *
- People with severe obesity (body mass index [BMI] of 40 or higher)[.]
- People with diabetes[.]
- People with chronic kidney disease undergoing dialysis[.]
- People with liver disease[.]

*Id*. (emphasis added). Mr. Vargas's asthma may be enough to place him in the CDC's category
of persons at "high risk for severe illness from COVID-19." That, however, is unclear.

FCI Lompoc appears to be the most severely affected BOP facility in the United States.
As of June 9, 2020, the BOP reports that at that facility 891 inmates have recovered from
COVID-19, two inmates have died from COVID-19, and one inmate currently is testing positive.

*See* https://www.bop.gov/coronavirus/ (last visited June 9, 2020).[2] The BOP further reports that 11 staff members at FCI Lompoc have recovered from COVID-19, no staff members have died, and seven staff members currently are testing positive. *Id.* FCI Lompoc currently holds 999 inmates. Although counsel for Mr. Vargas filed his reply on June 1, 2020 (ECF 991), nothing is said about Mr. Vargas's current medical condition since being tested on May 2 and diagnosed positive but asymptomatic with COVID-19 on May 6, 2020. *See* ECF 990 at 33. Also, the FCI Lompoc's Health Services reports that Mr. Vargas has remained asymptomatic through at least May 18, 2020. *Id.* at 24.

Compassionate release is "rare" and "extraordinary," and courts routinely deny such claims. *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) ("[A] compassionate release . . . is an extraordinary and rare event.") (citation omitted). A defendant bears the burden to show special circumstances meeting the high bar set by Congress and the Sentencing Commission for compassionate release. *See United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that a defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)). As other district courts have noted: "To be faithful to the

---

[2] The BOP's information, however, is of limited value. The BOP does not disclose whether or to what extent a facility is testing symptomatic or asymptomatic inmates, both or neither. In *United States v. Pabon*, 2020 WL 2112265, at *5 (E.D. Pa. May 4, 2020), the court cited Johns Hopkins Bloomberg School of Public Health Professor Leonard Rubenstein to explain the link between testing and limiting the spread of COVID-19: "Unless you do universal testing in all environments, the risk of spread is enormous. If you are waiting for symptoms to emerge before you do the testing, you are getting a false picture of what is going on . . . It's too late." *Id.* (citing Kevin Johnson, Mass Virus Testing in State Prisons Reveals Hidden Asymptomatic Infections; Feds Join Effort, USA TODAY (Apr. 25, 2020, updated Apr. 27, 2020), https://www.usatoday.com/story/news/politics/2020/04/25/coronavirus-testing-prisons-revealshidden-asymptomatic-infections/3003307001/) (last visited June 2, 2020); *see also Arias v. Decker*, 2020 WL 2306565, at *8 (S.D.N.Y. May 8, 2020) ("[W]hen it comes to vulnerable detainees . . ., monitoring them for signs of infection is too little, too late.").

statutory language requiring 'extraordinary and compelling reasons,' it is not enough that

Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic

conditions that can be managed in prison are not a sufficient basis for compassionate release."

*United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a

claim for compassionate release from a defendant suffering from severe back injuries and

epilepsy) (brackets in original) (quoting *United States v. Weidenhamer*, 2019 WL 6050264, at *5

(D. Ariz. Nov. 8, 2019)). The Court also must consider the sentencing factors under § 3553(a), to

the extent they are applicable. *See* § 3582(c)(1)(A) and USSG § 1B1.13.

The Court has considered all the relevant factors for compassionate release. Based on

Mr. Vargas's current health condition (including the fact that he appears to have remained

asymptomatic from his COVID-19 test date of May 2, 2020 through May 18, 2020,

notwithstanding his testing positive for that virus) and his criminal conviction in this case, the

Court concludes that Mr. Vargas has not shown special circumstances that meet the high bar set

by Congress and the Sentencing Commission for compassionate release.

## CONCLUSION

The Court DENIES Defendant's Motion for Early Release (ECF 984). Defendant,

however, has leave to seek reconsideration if he can provide any further information about his

current medical condition since May 18, 2020. The Court also declines to make any

recommendations to the BOP regarding early release or home confinement for Mr. Vargas.

**IT IS SO ORDERED.**

DATED this 9th day of June, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge